**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

ERICK ZANETICH,

                Plaintiff,                        No. 1:22-cv-05387

        v.

                                            **OPINION**

WAL-MART STORES EAST, INC d/b/a
WALMART, INC., *et al.*,

                Defendants.

**<u>APPEARANCES</u>**:

Justin Swidler
Joshua S. Boyette
SWARTZ SWIDLER, LLC
1101 Kings Highway North
Suite 402
Cherry Hill, NJ 08034

      *On behalf of Plaintiff.*

Christopher J. Moran
Leigh McMonigle
Tracey Elizabeth Diamond
TROUTMAN PEPPER
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103

      *On behalf of Defendants.*

**O'HEARN, District Judge.**

      This matter comes before the Court on a Motion to Dismiss Plaintiff Erick Zanetich's

("Plaintiff") Complaint for Failure to State a Claim pursuant to Federal Rule of Civil Procedure

12(b)(6) by Defendant Wal-Mart Stores East, LLC (improperly pled as "Wal-Mart Stores East,

Inc. d/b/a Walmart, Inc.") and Sam's East, Inc. (improperly pled as Sam's East, Inc. d/b/a Sam's Club Fulfillment Center) (collectively "Defendants"). (ECF No. 10). The Court did not hear argument pursuant to Local Civil Rule 78.1. For the reasons that follow, Defendants' Motion is **GRANTED**.

## I.    <u>BACKGROUND</u>

On January 21, 2022, Plaintiff applied for a job in the Asset Protection Department in one of Defendants' facilities in New Jersey. (Compl., ECF No. 1-1, ¶ 25). Defendants interviewed Plaintiff on January 25, 2022. (Compl., ECF No. 1-1, ¶ 26). A few days later, on January 28, 2022, Defendants offered Plaintiff the job, beginning on February 7, 2022, "subject to him submitting to and passing a drug test." (Compl., ECF No. 1-1, ¶ 27). Plaintiff alleges that at the time Defendants had a Drug & Alcohol Policy, that stated "any applicant or associate who tests positive for illegal drug use may be ineligible for employment," which included marijuana. (Compl., ECF No. 1-1, ¶¶ 20–22).

Plaintiff took a drug test on January 21, 2022, and tested positive for marijuana. (Compl., ECF No. 1-1, ¶¶ 28–29). Thereafter, Plaintiff contacted Defendants on February 10, 2022, for an update on his application. (Compl., ECF No. 1-1, ¶ 30). Two days later, Defendants informed Plaintiff that his job offer would be rescinded. (Compl., ECF No. 1-1, ¶ 31). Upon inquiry as to the reason for this decision, Plaintiff was advised it was because he had tested positive for marijuana. (Compl., ECF No. 1-1, ¶¶ 32–33).

On June 13, 2022, Plaintiff filed this action on behalf of himself and others similarly situated asserting two claims: (1) violation of the New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act ("CREAMMA"), N.J.S.A. 24:6I-52; and (2) failure to hire and/or termination in violation of New Jersey public policy.

## II.   PROCEDURAL HISTORY

Plaintiff filed this class action complaint in the Superior Court of New Jersey, Gloucester County. (Compl., ECF No. 1-1). On September 2, 2022, Defendants removed the case to this Court. (Notice of Removal, ECF No. 1). On October 7, 2022, Defendants filed a Motion to Dismiss the Complaint. (ECF No. 10). Defendants argue that CREAMMA does not provide a private cause of action and that New Jersey common law does not recognize a cause of action based on an employer's failure to hire. (Def. Br., ECF No. 10 at 1).

On November 8, 2022, Plaintiff filed a brief in opposition to Defendants' Motion. (ECF No. 13). Plaintiff argues that CREAMMA provides for an implied private cause of action and that his common law cause of action is cognizable as both a wrongful termination and failure to hire claim. (Pla. Br., ECF No. 13). Defendants filed a reply on November 14, 2022. (ECF No. 15).

## III.   LEGAL STANDARD

To state a claim, a complaint needs only to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Although "short and plain," this statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quotations, alterations, and citation omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* (citations omitted). Rather, a complaint must contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Id.* at 547.

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must accept the complaint's well-pleaded allegations as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 350 (3d

Cir. 2005). Through this lens, the court then conducts a three-step analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Next, the court should identify and disregard those allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id.* Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

On a Federal Rule of Civil Procedure 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). The court may only consider the facts alleged in the pleadings, any attached exhibits, and any matters of judicial notice. *S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

## IV.   <u>DISCUSSION</u>

Defendants have moved to dismiss, arguing that there is no express or implied cause of action under CREAMMA and that the Cannabis Regulatory Commission ("CRC") holds the sole authority to enforce CREAMMA. (Def. Br., ECF No. 10-1 at 2–3). Defendants further argue that New Jersey common law does not provide for a cause of action based on an employer's failure to hire under *Pierce v. Ortho Pharmaceutical Corporation*, 417 A.2d 505 (N.J. 1980). (Def. Br., ECF No. 10-1 at 8).

Plaintiff argues, after applying the three-part test first established by the United States Supreme Court in *Cort v. Ash*, 422 U.S. 66 (1975), that there is an implied private cause of action.

(Pla. Br., ECF No. 13 at 3). Plaintiff also maintains that the New Jersey Supreme Court would extend *Pierce* to failure to hire cases where an employer excludes a group of applicants in violation of New Jersey public policy. (Pla. Br., ECF No. 13 at 23).

This case presents a question of first impression under New Jersey law. Upon review of the statute and relevant case law, the Court dismisses the Complaint because there is no implied private cause of action in CREAMMA and the common law does not provide for a cause of action under *Pierce* based on an employer's failure to hire.

### A.  Count One – Violation of CREAMMA

No court has yet considered whether CREAMMA provides an implied private cause of action. The express language of CREAMMA is less than helpful. On one hand, it explicitly prohibits employers from taking certain adverse actions on the basis of an individual's use of marijuana ("the employment provision"). On the other, however, the New Jersey Legislature did not state how this provision could be enforced, by whom, and what, if any, remedies would be available. Thus, this Court, sitting in diversity, cannot infer that the Legislature intended to create an implied private cause of action.

### 1.  CREAMMA

In November 2020, the recreational use of marijuana became legal in New Jersey by constitutional amendment, effective January 1, 2021:

> The growth, cultivation, processing, manufacturing, preparing, packaging, transferring, and retail purchasing and consumption of cannabis, or products created from or which include cannabis, by persons 21 years of age or older, and not by persons under 21 years of age, shall be lawful and subject to regulation by the Cannabis Regulatory Commission . . . or any successor to that commission.

N.J. Const. art. IV, § 7, ¶ 13. Thereafter, on February 22, 2021, the Governor of New Jersey signed three bills, including CREAMMA, creating a regime of civil and criminal provisions to

regulate the legalized recreational use of marijuana. *See* N.J.S.A. 24:6I-31 *et al.* CREAMMA was

"designed to eliminate the problems caused by the unregulated manufacturing, distribution, and

use of illegal marijuana within New Jersey." N.J.S.A. 24:6I-32(c).

Most relevant here, one of the provisions of CREAMMA contains prohibitions as to an

employer's ability to take certain adverse action because of the then-newly-legalized recreational

use of marijuana:

> No employer shall refuse to hire or employ any person or shall discharge from
> employment or take any adverse action against any employee with respect to
> compensation, terms, conditions, or other privileges of employment because that
> person does or does not smoke, vape, aerosolize or otherwise use cannabis items,
> and an employee shall not be subject to any adverse action by an employer solely
> due to the presence of cannabinoid metabolites in the employee's bodily fluid from
> engaging in conduct permitted . . . . However, . . . [a] drug test may also be done
> randomly by the employer, or as part of a pre-employment screening, or regular
> screening of current employees to determine use during an employee's prescribed
> work hours. The drug test shall include scientifically reliable objective testing
> methods and procedures, such as testing of blood, urine, or saliva, and a physical
> evaluation in order to determine an employee's state of impairment. The physical
> evaluation shall be conducted by an individual with the necessary certification to
> opine on the employee's state of impairment, or lack thereof, related to the usage
> of a cannabis item in accordance with paragraph (2) of this subsection. The
> employer may use the results of the drug test when determining the appropriate
> employment action concerning the employee, including, but not limited to
> dismissal, suspension, demotion, or other disciplinary action.

N.J.S.A. 24:6I-52. CREAMMA designates the CRC with the power to regulate, investigate, and

prosecute all violations of the statute:

> The Cannabis Regulatory Commission shall have all powers necessary or proper to
> enable it to carry out the commission's duties, functions, and powers under [the
> statute]. The jurisdiction, supervision, duties, functions, and powers of the
> commission extend to any person who buys, sells, cultivates, produces,
> manufactures, transports, or delivers any cannabis or cannabis items within this
> State.
>
> . . . .
>
> The duties, functions and powers of the commission shall include the following:

. . . .

> To investigate and aid in the prosecution of every violation of the statutory laws of this State relating to cannabis and cannabis items and to cooperate in the prosecution of offenders before any State court of competent jurisdiction[.]

N.J.S.A. 24:6I-34(a), (b)(3).

### 2. There Is No Private Cause of Action Under CREAMMA.

Given that the parties acknowledge there is no explicit private cause of action in CREAMMA, (Pla. Br., ECF No. 13 at 2–3; Def. Br., ECF No. 10-1 at 2), the question is whether the statute confers an implied private cause of action. It does not.

As a general principle, a plaintiff cannot bring claims to enforce a statute if it does not have a private right of action. *Borough of Longport v. Netflix, Inc.*, No. 21-15303, 2022 WL 1617740, at *2 (D.N.J. May 20, 2022) (citing *In re State Comm'n of Investigation*, 527 A.2d 851, 853–54 (N.J. 1987)). "Both the United States Supreme Court and [the New Jersey Supreme] Court have held that a statute that does not expressly create a private cause of action may, nonetheless, implicitly create one." *Jarrell v. Kaul*, 123 A.3d 1022, 1029 (N.J. 2015) (citations omitted). Yet, "New Jersey courts have been reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such action." *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 773 A.2d 1132, 1142 (N.J. 2001). This is because the failure to explicitly include a private cause of action is "reliable evidence that the Legislature neither intended to create such a cause of action . . . nor desired the judiciary to create one by implication." *Miller v. Zoby*, 595 A.2d 1104, 1108 (N.J. App. Div. 1991).

The United States Supreme Court established three factors to determine if a statute confers an implied private cause of action, which has been adopted by the New Jersey Supreme Court:

> (1) plaintiff is a member of the class for whose special benefit the statute was enacted; (2) there is any evidence that the Legislature intended to create a private

> right of action under the statute; and (3) it is consistent with the underlying purposes
> of the legislative scheme to infer the existence of such a remedy.

*In re State Comm'n*, 572 A.2d at 854 (citing *Cort*, 422 U.S. at 78). "Although courts give varying weight to each one of those factors, 'the primary goal has almost invariably been a search for the underlying legislative intent.'" *R.J. Gaydos Ins. Agency, Inc.*, 773 A.2d at 1143 (quoting *Jalowiecki v. Leuc,* 440 A.2d 21, 26 (N.J. App. Div. 1981)). This Court will address each of the *Cort* factors in turn.

### a.  The First *Cort* Factor

The first *Cort* factor considers whether Plaintiff is a member of the class for whose special benefit the statute was enacted. Defendants maintain that the Legislature's focus in enacting CREAMMA was not on expanding the employment rights for individual applicants and employees but rather to provide a mechanism to regulate the manufacture, sale, and use of marijuana in New Jersey, while freeing up resources for the state's criminal justice system. (Defs. Br., ECF No. 10 at 6–7; Defs. Reply, ECF No. 15 at 3). Plaintiff, however, argues that "CREAMMA identifies a special class of individuals—individuals who use cannabis items—and enacted broad employment protections for this class." (Pla. Br., ECF No. 13 at 5).

As recently noted by this Court, "CREAMMA was enacted by the New Jersey State Legislature in order to implement the right to consume cannabis under the recently added Section VII of Article IV of the State Constitution." *Henson v. Daimler Truck N. Am. LLC*, No. 22-6479, 2013 WL 3072532, at *3 (Apr. 25, 2023) (Kugler, J.). Indeed, in its findings and declarations section, the Legislature specifically said "[t]his act is designed to eliminate the problems caused by the unregulated manufacturing, distribution, and use of illegal marijuana within New Jersey." N.J.S.A. 24:6I-32. The Legislature's intent was "to adopt a new approach to our marijuana policies

. . . in a similar fashion to the regulation of alcohol for adults." N.J.S.A. 24:6I-32(a); *see State v. Gomes*, 288 A.3d 825, 836 (2023).

Nevertheless, construing the statute liberally, Plaintiff is within the class for whose special benefit CREAMMA was enacted as it includes individuals who recreationally use marijuana.[1] Not to mention that the specific provision at issue here, N.J.S.A. 24:6I-52, states that "[n]o employer shall refuse to hire or employ any person or shall discharge from employment or take any adverse action against any employee . . . because that person does or does not smoke, vape, aerosolize or otherwise use cannabis items." Thus, Plaintiff, as a cannabis user, is part of the class for whose special benefit CREAMMA was enacted. *See, e.g.*, *Chance v. Kraft Heinz Foods Co.*, No. 01-056, 2018 WL 6655670, at *5 (Del. Super. Ct. Dec. 7, 2018) (explaining plaintiff, a medical marijuana cardholder, whose employment was terminated after he failed a drug test, was clearly within the class of person for whose benefit the Delaware statute—which prohibits employment-related discrimination against medical marijuana patients—was enacted). As such, the first *Cort* factor weighs in favor of finding an implied cause of action.

### b. The Second *Cort* Factor

Plaintiff having satisfied the threshold question as to the first *Cort* factor, the Court turns to the second factor in which the Court must determine and give effect to the Legislature's intent. *See R.J. Gaydos Ins. Agency, Inc.*, 773 A.2d at 1143; *see also Liberty Bell Bank v. Deitsch,* No.

---

[1] As a practical matter, the focus of CREAMMA is on regulating "any person who buys, sells, cultivates, produces, manufactures, transports, or delivers any cannabis or cannabis items within this State," N.J.S.A. 24:6I-34, as almost all the other over twenty subsections address recreational cannabis licenses. *See* N.J.S.A. 24:6I-31 *et seq*. As such, it is questionable whether Plaintiff is indeed a member of the class for whose special benefit CREAMMA was enacted: the Act reads like a licensing statute aimed at distributors, but with an employment provision shoehorned therein. Nevertheless, the Court construes CREAMMA liberally to include Plaintiff in the class.

08–0993, 2008 WL 4276925, at *3 (D.N.J. Sept. 9, 2008) (citations omitted) ("Th[e] [second] factor alone, without regard to the others, has been dispositive in recent cases."). As set forth below, this factor does not weigh in favor of finding an implied private cause of action in this case.

This Court's analysis is guided by federal courts' reluctance to interpret a state statute to create a private right of action where a private right of action is not expressly stated in the statute. *See MHA, LLC v. Amerigroup Corp.,* 539 F. Supp. 3d 349, 354–55 (D.N.J. 2021) (explaining that "federal courts 'should be even less inclined' than state courts to imply private rights of action from state statutes and regulations."). Not to mention that the New Jersey Supreme Court "has indicated that a court should be especially hesitant in implying a right to a private cause of action against an entity that is subject to such pervasive regulation by a State agency." *Castro v. NYT Television,* 851 A.2d 88, 94–95 (N.J. App. Div. 2004) (citing *R.J. Gaydos Ins. Agency, Inc.,* 773 A.2d at 1148–49); *see also Smith v. Conseco Life Ins. Co.,* No. 13-5253, 2014 WL 3345592, at *3 (July 8, 2014) (collecting cases)*; Veras v. LVNV Funding, LLC,* No. 13-1745, 2014 WL 1050512, at *8 (D.N.J. Mar. 17, 2014) (collecting cases); *R.J. Gaydos Ins. Agency, Inc.,* 773 A.2d at 1148– 49 (concluding no implied private cause of action against insurance company in light of "comprehensive regulation" of insurance industry); *Campione v. Adamar of N.J., Inc.,* 714 A.2d 299, 309 (N.J. 1998) (determining no implied cause of action against casino "when no such cause of action exist[ed] at common law" given the "elaborate regulatory scheme" under which casinos operate).

The New Jersey Supreme Court specifically addressed the relevant inquiry when a court is reviewing legislation to consider if there is an implied private cause of action in *In re State Commission of Investigation*. 527 A.2d at 852. There, the New Jersey Supreme Court considered whether plaintiffs, subjects of an investigation by the State Commission of Investigation ("SCI"),

could sue the SCI seeking an injunction to enforce its confidentiality obligations under a state statute. *Id*. In concluding that the statute did not create an implied private cause of action, the Court considered the fact that the legislative scheme of the statute—which provided that unauthorized disclosures shall be brought to the attention of the Attorney General—obviated the need for a private cause of action. *Id.* at 855–56. Therefore, the Court concluded, "[t]hus the Legislature has specifically provided a mechanism to ensure that the Attorney General checks violations of the duty of confidentiality imposed by [the statute]." *Id.* at 856. As such, the Court determined that "the doctrine of exhaustion of remedies should be applied to prevent circumvention of the establish procedures." *Id.* at 856 (quoting *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 695 (3d Cir. 1979), *cert. denied*, 444 U.S. 1074 (1980)).

Similarly, and most analogous here, the New Jersey Appellate Division did not find a private cause of action in *Jalowiecki v. Leuc*, 440 A.2d 21 (N.J. App. Div. 1981), for the same reason. There, the Court concluded that the environmental regulations at issue did not authorize an implied private cause of action because the Department of Environmental Protection ("DEP") is charged with enforcing the provisions at issue. *Id.* at 27. Indeed, the Court explained that the DEP had the power to enforce in a summary proceeding, impose fines, and seek injunctions, among other powers and that "[t]he purpose of providing such broad remedies and enforcement procedures would seem to be to allow the Department a variety of tools to force rapid compliance with the standards promulgated pursuant to the Act." *Id.* at 27.

With this background, and reviewing CREAMMA in its entirety as presently written, there is evidence that the Legislature intended for the CRC to handle all aspects of the enforcement of the statute. Indeed, the Legislature specifically created the CRC and then empowered it with the authority to "investigate and aid in the prosecution of every violation of the statutory laws of this

State relating to cannabis and cannabis items and to cooperate in the prosecution of offenders before any State court of competent jurisdiction." N.J.S.A. 24:6I-34(b)(3). To do so, the CRC is empowered to "adopt, amend, or repeal regulations as necessary to carry out the intent and provisions of [CREAMMA]" and "[t]o exercise all powers incidental, convenient, or necessary to enable the commission to administer or carry out the provisions of [CREAMMA] or any other law of this State that charges the commission with a duty, function, or power related to personal use cannabis." N.J.S.A. 24:6I-34. To exercise this authority, the Legislature gave the CRC the following powers:

(a) Issuing subpoenas;

(b) Compelling attendance of witnesses;

(c) Administering oaths;

(d) Certifying official acts;

(e) Taking depositions as provided by law;

(f) Compelling the production of books, payrolls, accounts, papers, records, documents, and testimony; and

(g) Establishing fees in addition to the application, licensing, and renewal fees, provided that any fee established by the commission is reasonably calculated not to exceed the cost of the activity for which the fee is charged.

N.J.S.A. 24:6I-34(b)(5).

Additionally, as Plaintiff notes, (Pla. Br., ECF No. 13 at 16), the statement accompanying the bill provides that CREAMMA "primarily concerns the development, regulation, and enforcement of activities associated with the personal use of products that contain useable cannabis or cannabis resin (the terms provided to distinguish the legalized products from unlawful marijuana or hashish) by persons 21 years of age or older" and that "[t]his would be accomplished through the expansion of the scope and duties of the Cannabis Regulatory Commission." *See* Appropriations

Committee Report Statement to Assembly Bill No. 21, Dec. 15, 2020, *available at*

*https://www.nleg.state.nj.us/bill-search/2020/A21/bill-text?f=A0500&n=21_R1*. Indeed, CREAMMA

did not become operative until after the CRC adopted rules and regulations. *See* N.J.S.A. 24:6I-34

("On the date of adoption of the initial rules and regulations pursuant to subparagraph (a) of

paragraph (1) of this subsection, the provisions of P.L.2021, c. 16 (C.24:6I-31 et al.) shall become

operative . . . ."). And the CRC's Personal Use Rules, issued on August 19, 2021, like the statute

itself, specifically state that the CRC will "[i]nvestigate and aid in the prosecution of every

violation of the statutory laws of this State relating to cannabis and cannabis items and cooperate

in the prosecution of offenders before any State court of competent jurisdiction" and will "[a]dopt,

amend, or repeal rules as necessary to carry out the intent and provisions of the [CREAMMA]."

N.J.A.C. 17:30-3.3(a)(3)-(4). Moreover, the CRC reiterated in its regulations that "[t]he

Commission shall assume all powers, duties, and functions with regard to the regulation and

oversight of activities authorized pursuant to the Act." N.J.A.C. 17:30-3.1.

Just last year, the CRC began issuing guidance on the employment provision, N.J.S.A.

24:6I-52, albeit related to a different subsection dealing with Workplace Impairment Recognition

Expert certifications. *See* CRC, *New Jersey Cannabis Regulatory Commission issues guidance for

workplaces*, https://www.nj.gov/cannabis/news-events/approved/20220907.shtml.[2] The Court

certainly recognizes, as Defendants note, (Def. Br., ECF No. 15 at 8), that the CRC is a new

administrative body that will presumably continue to develop and adopt rules and regulations. Yet,

in its current form, the lack of any provision in CREAMMA as to how the employment provision

---

[2] As yet another example of the ambiguities with which CREAMMA's employment provision is fraught, although the CRC has provided guidance related to workplace drug testing, it seems questionable as to whether its jurisdiction even extends to employers given the description of its jurisdiction as extending to "any person who buys, sells, cultivates, produces, manufactures, transports, or delivers any cannabis or cannabis items within this State." N.J.S.A. 24:6I-34(a), (b)(3).

can be enforced, by whom, and what remedies, if any, are available, in and of itself, negates the argument that the Legislature intended for an individual to bring a private cause of action under CREAMMA.

Plaintiff argues that the employment provision's use of rights-creating language supports a finding that the Legislature intended for there to be an implied private cause of action. (Pla. Br., ECF No. 13 at 7–8). Yet, the Supreme Court has explained "even where a statute is phrased in such explicit rights-creating terms, a plaintiff suing under an implied right of action still must show that the statute manifests an intent 'to create not just a private *right* but also a private *remedy.*'" *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) (quoting *Alexander v. Sandoval,* 532 U.S. 275, 286 (2001) (emphases in original)). The Court has reiterated that it is not just whether the statute displays an intent to create a private right, but it also must intend to create a private *remedy*. *Sandoval*, 532 U.S. at 286. "Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286–87. Indeed, "[r]aising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals." *Id.* at 287. And Plaintiff has not pointed to any case in which a federal court sitting in diversity has found an implied private cause of action from a statute devoid of any intent to do so. Plaintiff is asking this Court to infer a private cause of action and fashion a remedy despite the Legislature's silence on the issue. The Court will not do so.

Notably, other employment statutes adopted by the New Jersey legislature, such as the Conscientious Employee Protection ("CEPA") and the New Jersey Law Against Discrimination ("NJLAD"), explicitly provide for a private cause of action. *See* N.J.S.A. 34:19-5 ("Upon a violation of any of the provisions of this act, an aggrieved employee or former employee may,

within one year, institute a civil action in a court of competent jurisdiction."); N.J.S.A. 10:5-12.11 ("Any person claiming to be aggrieved by a violation [of the Law Against Discrimination] may initiate suit in Superior Court."). Not only do these other employment statutes explicitly provide for a private cause of action, these statutes also expressly provide for a remedy, neither of which is present in CREAMMA. *See* N.J.S.A. 10:5-12.1 (stating violation of the NJLAD can include back pay and reinstatement); N.J.S.A. 10:5-13(a)(2) (identifying other remedies available under NJLAD); N.J.S.A. 34:19-13 (identifying remedies available under CEPA). As evidenced in these employment statutes, the Legislature knows how to create a private cause of action in the employment context and will expressly do so to show its intent.[3]

That there was another bill signed into law on the same day as CREAMMA, which contained a similar employment provision, N.J.S.A. 34:6B-21, that expressly disclaimed the intent to create a private cause of action in the context of cannabis regulation further supports the Court's conclusion. That provision states "[a]n employer shall not be permitted to, when making an employment decision, rely solely on, or require any applicant to disclose or reveal, or take any adverse action against any applicant for employment solely on the basis of, any arrest, charge, conviction . . . [for] . . . marijuana . . . in violation [of the criminal code] . . . regardless of when any such arrest, charge, conviction, or adjudication of delinquency occurred, unless the employment sought or being considered is for a position in law enforcement, corrections, the

---

[3] Although this Court in *Merlo v. Federal Express Corporation* agreed with state courts that an implied private cause of action existed under a provision of the New Jersey Wage and Hour Law ("NJWHL"), that case is readily distinguishable as the remedy was easily discernible from the NJWHL and corresponding regulations. No. 17-4311, 2010 WL 2326577, *9–10 (D.N.J. May 7, 20210) (Brown, C.J.). As such, this Court limited the plaintiff's damages to the wages owed under the governing provisions of the NJWHL as statutory and punitive damages were not available. *Id.* at *10. Unlike *Merlo*, here, there is no indication in the statute or regulations as to what remedy would be available for a violation of the employment provision of CREAMMA.

judiciary, homeland security, or emergency management." N.J.S.A. 34:6B-21(a). This provision is more specific than N.J.S.A. 24:6I-52, at issue here, because it specifically provides that an employer who commits an act in violation of this section is liable for a civil penalty collectible by the Commissioner of Labor and Workforce Development. N.J.S.A. 34:6B-21(b). Notably, though, the section also states that "[n]othing set forth in this section shall be construed as creating, establishing, or authorizing a private cause of action by an aggrieved person against an employer who has violated, or is alleged to have violated, the provisions of this section." N.J.S.A. 34:6B-21(c). Although N.J.S.A. 24:6I-52 does not explicitly state that there is no private cause of action intended as does N.J.S.A. 34:6B-21(b), it would be illogical to conclude that the Legislature precluded a private cause of action in N.J.S.A. 34:6B-21(b), but intended to create one in CREAMMA particularly given the lack of any language so stating and the lack of any specification as to what remedies would be available. Further, the fact that N.J.S.A. 34:6B-21(b) vested enforcement authority in an existing state agency, the Commissioner of Labor and Workforce Development, supports the conclusion that the Legislature intended for enforcement of the employment provision at issue here to be within the province of the CRC. *But see supra n.1.*

The cases on which Plaintiff relies, (Pla. Br., ECF No. 13 at 5–6), do not persuade the Court otherwise. Unlike CREAMMA and the CRC, these cases—which have found an implied private cause of action in similar employment-related provisions in other state's medical marijuana statutes—involve statutes that are distinct from CREAMMA in that no agency or commission was created and tasked with enforcement of the statute. *See Chance*, 2018 WL 6655670, at *6 (concluding legislative intent to establish a private cause of action, in part, because no agency or commission has been tased with enforcement of similar anti-discrimination provision); *Noffsinger v. SSC Niantic Operating Co. LLC*, 273 F. Supp. 3d 326, 339–40 (D. Conn. Aug. 8, 2017)

(determining employment-related discrimination provision of Connecticut's medical marijuana statute contained implied private cause of action because there was no indication of legislative intent to deny a private cause of action and the law did not provide for any other enforcement mechanism); *Whitmire v. Wal-Mart Store Inc.*, 359 F. Supp. 3d 761, 776 (D. Ariz. 2019) (concluding private cause of action in employment-related discrimination provision of medical marijuana statute after noting that there was no independent enforcement mechanism against employers for violations of the provision); *Callaghan v. Darlington Fabrics Corp.*, No. 14-5680, 2017 WL 2321181, at *5 (R.I. Super. Ct. May 23, 2017) (addressing a similar employment-related discrimination provision in a medical marijuana statute and determining a private cause of action existed as no state department was given authority to enforce the provision); *Palmiter v. Commonwealth Health Sys., Inc.*, 260 A.3d 967, 977 (Pa. Super. Ct. Aug. 10, 2021) (concluding an implied private cause of action existed for employment-related discrimination provision in medical marijuana statute despite the fact that the statute charged Department of Health with the implementation and administration of the statute because provision did not provide an independent enforcement mechanism against employers who violated the provision). Although the Court recognizes that the majority of states with similar employer-related provisions have found an implied private cause of action, there is one critical distinguishing feature between CREAMMA and the other states' recreational, or medical marijuana, statutes: the creation of the CRC—tasked with enforcing CREAMMA.

In summary, there is simply no indication that the Legislature intended to allow an individual to pursue a private cause of action for a violation of CREAMMA. Plaintiff has not pointed to any evidence of legislative intent to the contrary sufficient to overcome the reluctance to find an implied private cause of action when the Legislature has not explicitly created one. Thus,

the second factor does not weigh in favor of Plaintiff. *See Smith*, 2014 WL 3345592, at *5 ("This Court is obliged to heed the words of New Jersey's Supreme Court, which disfavors finding an implied private right of action in the context of a 'comprehensive legislative scheme including an integrated system of procedures for enforcement,' such as 'civil penalty provisions.'" (quoting *R.J. Gaydos Ins. Agency, Inc.*, 773 A.2d at 1144)).

### c.  The Third *Cort* Factor

Finally, the third factor requires a finding that it is consistent with the underlying purposes of the legislative scheme to infer the existence of such a remedy. For similar reasons as set forth above related to the second *Cort* factor, the third factor does not weigh in favor of finding an implied private cause of action in this case.

Indeed, as discussed, the legislative scheme does not support an inference that there is an implied private cause of action under CREAMMA. "New Jersey courts have been reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such action." *Id.* at 1142. Moreover, as recognized by the Third Circuit, "for an implied right of action to exist, a statute must manifest [the legislature's] intent to create (1) a personal right, and (2) a private remedy." *Three Rivers Ctr. v. Housing Auth. of the City of Pittsburgh*, 382 F.3d 412, 421 (3d Cir. 2004). Here, it cannot be inferred from the legislative scheme, which does not even suggest a private remedy, that there is a private cause of action under CREAMMA.

Thus, in light of the legislative scheme of CREAMMA, with its delegation of authority to the CRC to create regulations and enforce violations, the third factor too does not weigh in favor of finding an implied cause of action. *See Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 305 (3d Cir. 2007) ("Agency enforcement creates a strong presumption against implied private rights of action that must be overcome."); *Campione v. Adamar of New Jersey, Inc.,* 714 A.2d 299, 309 (N.J. 1998)

(declining to imply cause of action for damages for plaintiff because the act contained elaborate regulatory scheme).

For these reasons, the Court concludes there is no private cause of action under CREAMMA and grants Defendants' Motion to dismiss Count One for failure to state a claim.

### B. New Jersey Common Law Does Not Provide for a Cause of Action for Failure to Hire.

Plaintiff asserts a "failure to hire/wrongful discharge" *Pierce* claim. (Compl., ECF No. 1-1, ¶¶ 42–47). Defendants maintain that the allegations of the Complaint make clear that Plaintiff was never employed by Defendants and that this is fatal to Plaintiff's claim because the failure to hire is not actionable under *Pierce*. Defendants are correct.

In New Jersey, an at-will employee "has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy"—commonly referred to as a *Pierce* claim. *Santiago v. City of Vineland,* 107 F. Supp. 2d 512, 567 (D.N.J. 2000) (quoting *Pierce*, 417 A.2d at 512).

Though Plaintiff states his claim is for "failure to hire/wrongful discharge" and he alleges that Defendants "refus[ed] to hire and/or terminat[ed]" Plaintiff, Defendants are correct that the allegations make clear that Plaintiff was in fact never employed. Indeed, the Complaint alleges that Plaintiff was *offered* a job with Defendants subject to him submitting to and passing a drug test. (Compl., ECF No. 1-1, ¶ 27).  This is commonly referred to as a conditional job offer. After he tested positive for marijuana, Defendants rescinded the job offer. (ECF No. 1-1, ¶ 31). Given that Plaintiff's employment was conditioned upon an act with never occurred, he was never employed. As such, as Plaintiff himself notes, Defendants did not terminate him, they rescinded his conditional job offer. (ECF No. 1-1, ¶ 31).

As Plaintiff was never employed by Defendants, he fails to state a wrongful discharge claim because a failure to hire claim cannot support a *Pierce* claim. Unlike Plaintiff's first claim, this is not an issue of impression. Both this Court and New Jersey appeals courts have time and time again found that there is no cause of action under common law for failure to hire. The Court sees no reason to depart from this authority. *See Giles v. Lower Cape May Reg'l Sch. Dist. Bd. of Educ.*, No. 12-5688, 2014 WL 3828166, at *5 (D.N.J. Aug. 1, 2014) ("New Jersey courts, however, refuse to extend *Pierce* beyond the wrongful discharge context."); *Ebner v. STS Tire & Auto Ctr.*, No. 10-2241, 2011 WL 4020937, at *7 (D.N.J. Sept. 9, 2011) ("What [the plaintiff] actually alleges is a common law action for failure to hire, a cause of action not recognized by New Jersey courts."); *Lerner v. City of Jersey City*, No. 17-1024, 2019 WL 1468735, at *4 (N.J. App. Div. Apr. 2, 2019) ("[T]he failure to hire is not a cause of action that is recognized under *Pierce*."); *Sabatino v. St. Aloysius Parish*, 672 A.2d 217, 221 (N.J. App. Div. 1996) (stating that *"Pierce* has not been applied to failure to hire or promote situations")*.*

Accordingly, because there is no common law cause of action for failure to hire, the Court grants Defendants' Motion to dismiss Count Two for failure to state a claim.

*****

The Court recognizes that its decision leaves Plaintiff without a remedy and essentially renders the language of the employment provision meaningless. Yet, that is the outcome dictated by the law. It is not the function of the Court to re-write incomplete legislation or create remedies for a statutory violation where the Legislature did not. If the State expects this statutory scheme to work and for these stated protections from adverse employment action not to be illusory, the Legislature, CRC, or the Supreme Court of New Jersey must act. If the Legislature intended for there to be a private cause of action, it should amend the statute to clearly evidence that intent,

including how the provision can be enforced, by whom, and what remedies are available as it has

previously done in many other employment related statutes. If the Legislature intended for the

CRC to enforce the employment provision, then the CRC should duly adopt regulations to exercise

that power and provide much-needed guidance to employers and employees. However, if neither

the Legislature nor the CRC takes such action, perhaps a New Jersey state court would find it

appropriate to depart from its prior precedent rejecting a failure to hire common law *Pierce* claim

given that the statute at issue here which is the source of the public policy itself references a failure

to hire. However, the job of a district court sitting in diversity is to predict what the state supreme

court would do. And all the evidence available—i.e., the relevant precedent—is clear that *Pierce*

does not reach these situations.[4]

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**. (ECF No. 10).

An appropriate Order accompanies this Opinion.

**CHRISTINE P. O'HEARN**
**United States District Judge**

---

[4]  The New Jersey Supreme Court accepts certified questions of state law from the United States Court of Appeals for the Third Circuit, N.J. Ct. R. 2:12A–1–8, however, it does not accept certified questions from this Court. If this case were to reach the Third Circuit, perhaps it would find these questions suitable for certification.